Appeal of **WAYNESBORO MANUFAC-**     Docket No. 1277.
          **TURERS ASSOCIATION.**

> An organization claiming exemption from tax must prove clearly that it is within the provisions of section 231 of the Revenue Act of 1918.
> Such provisions must be strictly construed.
> A business league, to be exempt, must be one not organized for profit and also one no part of the net earnings of which inures to the benefit of any private stockholder or individual. Both tests must be met with evidence.
> The intendment of subdivision (6) also applies to subdivision (7).
> The Commissioner has no authority to destroy the exemption of any organization by restrictive regulations.

Submitted March 16, 1925; decided March 30, 1925.

*William Clabaugh, C. P. A.*, and *Edward M. Tyler, C. P. A.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

The taxpayer appeals from a deficiency in income and profits tax for 1920, and claims exemption from tax under the Revenue Act of

1918, section 231 (7), as a "business league, chamber of commerce, or board of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private stockholder or individual." The facts are agreed.

### FINDINGS OF FACT.

The taxpayer is an unincorporated association. Its constitution contains the following:

#### ARTICLE II.  OBJECTS.

*Section I.* The promotion of an association of corporations, associations, partnerships or individuals interested in the equitable adjustment of the relations between employer and employee.

*Section II.* To promote and encourage cordial relations between employer and employee, to secure by cooperation with other organizations or with individuals rational legislation governing the relations of employer and employee, and to improve the working and social conditions of the employee; through education along the lines which tend to promote a clearer understanding between employer and employee.

*Section III.* To end if possible the economic waste and human suffering caused by strikes and lockouts, by seeking, through the concerted action of members of this Association, to abrogate the causes leading up to them.

*Section IV.* To establish a bureau of statistics where shall be kept the number of employers and employees in the Association, the business, occupation and trades in which they are engaged; and all other statistics necessary to the purposes and success of this Association.

*Section V.* To endeavor to secure efficient traffic and transportation facilities for employer and employee.

*Section VI.* To foster, in so far as possible, collective buying and to investigate the worth and merit of materials and propositions submitted to members of the Association.

*Section VII.* This Association shall not be conducted for profit but shall be maintained by fees, subscriptions and savings effected by collective buying; provided that when a working capital of $25,000 is accumulated these fees, etc., shall be reduced so that they shall cover only the running expenses of this Association.

*Section VIII.* If for any reason this Association shall be abandoned and have on hand assets of any kind whatsoever, same shall not revert to any persons or firms, but shall be used for educational or recreational purposes for the employees of the members of this Association, or the peoples of this Community.

During 1919, 1920, and 1921 the taxpayer had contracts with certain coal mining companies whereby at its election it had the right to purchase coal from the mines at specified prices per ton. The taxpayer made it known among its members and a few others that it had these contracts and received from its members and such few others orders for coal at such contract price. The taxpayer charged the purchaser for the coal 15 cents per ton on the amount of coal so ordered. The orders so received by the taxpayer were transmitted to the mining companies and by them fulfilled by shipment directly to the purchaser. The mining company sent its bill directly to the purchaser, who paid the amount to the taxpayer plus the 15 cents per ton aforesaid. The taxpayer sent the contract price to the mining company and retained the 15 cents per ton. From this it

derived income in 1920, but we are unable from the record to determine the amount.[1]

The Commissioner determined a deficiency of $1,471.97 for 1920.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

[1] The stipulation contains the following:

The profits realized by the appellant in the transaction aforesaid for the years in question were as follows:

|  | 1919. |  |
|---|---|---|
| Total sales | | $55, 105. 05 |
| Amount purchased | $50, 240. 53 | |
| Less inventory | 47. 67 | |
| | | 50, 192. 86 |
| Income from sales | | 4, 912. 19 |
|  | 1920. |  |
| Total sales | | $211, 774. 09 |
| Amount purchased | $189, 538. 74 | |
| Inventory 12/1/19 | 47. 67 | |
| | 189, 586. 41 | |
| Less inventory 12/31/20 | 14. 40 | |
| | | 189, 572. 01 |
| | | 22, 202. 08 |
|  | 1921. |  |
| Total sales | | $51, 461. 89 |
| Amount purchased | $46, 251. 13 | |
| Inventory 1/1/21 | 14. 40 | |
| | 46, 265. 53 | |
| Less inventory 11/30/21 | 29. 70 | |
| | | 46, 235. 83 |
| Income from sales | | 5, 226. 06 |

The notice of deficiency contains the following:

#### 1919

| | |
|---|---|
| Net income reported | $3, 415. 74 |
| Less: | |
| Dues from members (not taxable) | 3, 259. 47 |
| Income adjusted | 156. 27 |
| Exemption | 2, 000. 00 |
| Tax due | None. |
| Previously assessed | None. |

#### 1920

| | |
|---|---|
| Net income reported | $11, 869. 49 |
| Less: | |
| Dues from members | 3, 969. 58 |
| Balance taxable | 7, 899. 91 |
| Excess profits tax, section 301 | 979. 98 |
| Tax at 10% | 491. 99 |
| Total tax assessable | 1, 471. 97 |
| Previously assessed | None. |
| Additional tax | 1, 471. 97 |

OPINION.

STERNHAGEN: Both parties agree that the taxpayer was a business league, but they do not agree whether it was one "not organized for profit and no part of the net earnings of which inures to the benefit of any private stockholder or individual," and therefore exempt by the statute.

Like all other statutes, this provision must be construed so as to give effect to its intendment. But since it is an exemption, it must be strictly construed, and the taxpayer must establish clearly that it comes squarely within its provisions.

The language of this exemption is, for purposes of construction, exactly the same as the language of the exemption in subdivision (6) of the same section of the statute, as follows:

Corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.

The only difference between the organizations set forth in the two subdivisions is that the organizations in subdivision (7) are expressly confined to those "not organized for profit," while those in subdivision (6), being necessarily and by their nature not organized for profit, do not require the expression of this limitation. We mention this parallel because the Supreme Court has considered subdivision (6), and what it has said about the statutory exemption in the case of corporations which are implicitly not organized for profit applies to the organizations of subdivision (7) which are explicitly so. In *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578, Mr. Justice Van Devanter said for the Court:

Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific, or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain.

From this it appears that as to the organizations of subdivision (6), notwithstanding that the corporation may have income, the question is in respect of the destination of such income, Does any part thereof inure to the benefit of any private stockholder or individual? As to organizations of class (7), the same question applies, together with the additional question, Is it organized for profit? If it is organized for profit, it is not exempt.

Looking at the constitution of the taxpayer, it appears not alone from its affirmative statements of purpose and objects, but by an express inhibition that it " shall not be conducted for profit." It may acquire a working capital of $25,000, but this is not the avowed purpose of its creation. Such working capital is only for the purpose of enabling it to fulfill its nonprofit functions. And the evidence does not contain any facts which would indicate that actually the association was conducted for profit. It had earnings, but the Supreme Court in the *Trinidad* case clearly said that Congress con-

templated this and that net income does not take the organization out of the statute. We think the taxpayer is a business league not organized for profit.

The second question is as to the destination of the income—whether any part inures to the benefit of any private individual. This is a question of fact to be determined upon evidence. Because an association is not organized for profit does not prove that it has not in fact distributed its net earnings to its members, and Congress apparently intended to tax any organization which was used as the means of private gain notwithstanding that it was created for a patriotic, civic, or other altruistic purpose. Actual distribution to any individual defeats the exemption. Here, however, the Commissioner agrees that the taxpayer retained for its own use its earnings. No part thereof inured to the benefit of any individual. Thus the statutory qualifications are fully met.

This statutory exemption the Commissioner may not destroy by a regulation restricting its application more narrowly than the restrictions of the statute itself.